The next case is 7001 East 71st Street v. Continental Casualty. Good morning, your honors. May it please the court, my name is Mark Rifkin on behalf of the appellant 7001 East 71st Street. This appeal concerns whether insurance coverage for damage to covered electrical and mechanical equipment located inside the appellant's insured shopping center caused by rainwater that entered into the building during Superstorm Sandy was excluded by a narrow windstorm exclusion in the defendant's insurance policy. The policy covered damage only to covered equipment, a term that was defined in the policy to be electrical or mechanical equipment used in the generation, transmission, or utilization of energy. None of the electrical equipment on the roof of the shopping center, such as air conditioning equipment, was damaged during Superstorm Sandy. The roof itself was not covered equipment and was not insured under the policy. There are essentially two issues that we ask the court to consider. First, we ask that the policy of insurance be applied literally according to the words used in the policy, that words not be deleted from the exclusion, and that words not be added to the exclusion. We also ask that the court decide in the first instance whether the exclusion for windstorm damage applies before deciding the effect of a so-called anti-concurrent causation provision within that exclusion. If the exclusion itself doesn't apply to the loss, then the anti-concurrent causation clause doesn't resuscitate the exclusion. If I'm understanding your argument correctly, help me out if I'm not, focusing on the exclusion, your argument is that your adversary's reading renders the words a breakdown that is caused by surplus or not in the exclusion. We think there are two mistakes. First, the court's interpretation and the insurance company's argument erases those words from the clause. They are not, those words, a breakdown caused by. They are not in most of the other enumerated exclusions. There's 20-some exclusions, and that phrase, a breakdown caused by windstorms. You say there was no breakdown because a breakdown is defined as a sudden accidental direct physical loss to covered equipment, and the damage to the roof was not to covered equipment. That is precisely correct. You say that there was no breakdown, and you say that that is in contrast with other places where it says loss or damage caused directly or indirectly by earth movement or so on. Correct. Without that precatory phrase of breakdown. That is correct. That's your point, and you say that's sufficiently ambiguous so that under New York law, which is very strongly against the insurance company, too strongly perhaps, but it is that way that that is an ambiguity. Well, two points on that, Your Honor, but you are quite correct. The first point is that quite literally, the language has to be interpreted the way it's written, and if the exclusion requires a breakdown to apply, you have to find that there was a breakdown. There was no breakdown to covered equipment caused by windstorm. That's the first point, but the second point is if there's a doubt about that, if there is ambiguity in the policy, and we say there's none. We don't think you need to find ambiguity in the policy, but if there was ambiguity in the policy, then yes, Your Honor, New York law, as it's been applied by the New York courts and in this court, New York law strictly enforces the insurance policy and resolves all doubts against the insurance company. So either way, we think we prevail. I agree with you as to that reading policy. What is it we should do in this appeal? Well, Your Honor, I believe that if the court agrees with that interpretation of the policy, then the motion for summary judgment, which rested only on the district court's different interpretation, it needs to be vacated, and the case needs to be remanded. As far as we know, we vacate the motion for summary judgment because there are other triable issues with respect to whether there's coverage. There are, in fact, other triable issues, and just to put that into perspective, there were two cases, there were two insurance policies that covered this property. One was the insurance policy that's at issue here. It was a limited purpose policy. It applied only to mechanical and electrical equipment. There is also a general property policy. The cases were coordinated. They were discovered together. They were litigated together. The motion for summary judgment as to the other policy, which raised all the same issues except this one, that motion was denied, and that case is now set to be tried. The trial is well off. The trial date is not until March 2019, but the court denied all the other issues that were common between the two policies. The only difference between the two policies is the presence of this windstorm exclusion in CNA's policy that was absent in Chubb's policy. The defendant also argues that rain damage isn't sudden and that there was corrosion, and the district court didn't deal with those, so that if we agree with you on the first point, even on this policy specifically, we would send . . . you agree that we should send these things back for the district court to decide them. You make arguments why they don't apply, but that's not the sort of argument we should be deciding in the first instance. Judge Goldberg. It need not be addressed here. We actually think that when it goes back to the district court with clarification on this narrow issue, which was the only difference between the two policies, we think the district court will have no problem applying its analysis from the other case. It's sufficient for you to agree with my interpretation of the policy to reverse on that basis to vacate the decision on summary judgment and send us back. I don't think we need to do anything else. Whether we determine that the policy is ambiguous or clear in your direction as to what we should do in that vacater . . . Well, only in so far as the actual analysis is concerned. Again, I believe that the clear language of the policy literally applied provides ample support for our position, but if the court were to find otherwise, then the court needs to make a conclusion that the ambiguity has to be resolved against the insurance company and in favor of the insured, which then leads to the same result. But the result is the same, whether we do it because New York law tells us that where an ambiguity is to be determined one way or we say there is no ambiguity in your favor, the result is on this point, according to you, you win. Either way. Either way is . . . Better. Yes, Your Honor. Either way is sufficient. I believe so. Would there be a need to consider extrinsic evidence on the ambiguity before deciding whether the interpretive rule applies? I think the evidence actually that we point to that's sufficient to resolve any ambiguity that may exist is all the other language that's used in the policy. One of the things that we found to be particularly significant was the fact that of the twenty or so enumerated exclusions, this was one of only one or two that used that phrase. And so, we think that it's enough to make a reasonable insured understand that coverage applies. But if the Court were to say that there's ambiguity, then I suppose CNA could say, well, what did the insured understand? And there would be testimony about that, but that would be for trial. It's not sufficient for summary judgment. No evidence of extrinsic evidence was introduced before because the Court read it unambiguously the other way. So one of the questions I'll ask opposing counsel is, do you have extrinsic evidence And I'll address that question after opposing counsel in my rebuttal. But yes, Your Honor, there was no evidence, no extrinsic evidence in the record for summary judgment that would permit the Court to make a contrary conclusion, which we think is completely unwarranted. Thank you very much. Good morning. May it please the Court? Richard Sprock for Continental Casualty. I want to jump right to the Court's questions about ambiguity. The only support and argument for ambiguity here was based on an endorsement, I should say a definition, that was superseded by endorsement. So there's no conflict between cause and the definition of breakdown and cause by windstorm. The breakdown definition is quite lengthy, but boiled down, it says physical damage to equipment. It says the sudden and accidental physical loss to covered equipment. Correct. And here, there was no loss due to the wind to covered equipment. The wind damaged the roof, which was not covered equipment. You have to back up to the insuring clause. The insuring clause is we pay for loss or damage caused by a covered cause of loss. A covered cause of loss is a breakdown to covered equipment. That's just physical damage to covered equipment. That's what they're claiming for. They're claiming there was a breakdown to covered equipment. We're talking about the exclusion and what the exclusion means. And here, the exclusion is different from other exclusions. We say damage directly or indirectly caused by earthquake, earth movement, and so on. So you have two different types of exclusion. An exclusion to damage to breakdown and an exclusion directly or indirectly to other things. Your Honor, when the policy wants to cover a breakdown as a result of excluded peril, it says so. That's the wear and tear exclusion, latent defect, corrosion. There are many other references to breakdown within the exclusions. The reference to breakdown in the windstorm exclusion just puts it in context. And as I said, define. And do you have extrinsic evidence that it means what you say it means? If we assume that this is not clear, that it is ambiguous, and therefore that extrinsic evidence is to its meaning, obviously you didn't have to bring it in because the district court found it clear your way. If we disagree, do you have extrinsic evidence which suggests a different meaning for this? Yes, Your Honor. I'm sure we could come up with evidence. The breakdown policy has been around for over 100 years. But we don't think it's ambiguous. I understand what you're saying it isn't. I'm asking if you have, and we can come up with evidence is a nice statement, but do you have anything in negotiations in what is typical? Extrinsic evidence is extrinsic. You are now arguing from the contract again. And if a contract is ambiguous, the contract is ambiguous. What I want to know is if you have extrinsic evidence, that is, negotiations which say something like, hey, if a wind damages the roof, then, et cetera. Do you have any evidence of that sort? The forms are based on ISO forms, Insurance Services Office. And I'm sure they have, I know for a fact they have interpretive guidance on these policies. But what I would offer is that if you- I'm missing my point. Interpretative guidance that you have on the policy is one thing. I want to know if there is what is correctly termed extrinsic evidence. That would be testimony by the underwriter that issued the policy? Testimony about what the parties meant. When you have an ambiguous contract, extrinsic evidence is evidence as to what these particular parties in their negotiations meant by what is ambiguous evidence. Because if it is ambiguous evidence and there is no testimony by the parties, New York tells us how we read the ambiguity. But if there is evidence that these parties meant something else specifically, then we don't do that. Okay.  There were two policies issued, one an all-risk policy issued by Chubb, another an equipment breakdown policy. The equipment breakdown policy is a supplemental policy. It's meant to cover specific things that typically aren't covered by the all-risk policy. So ask the agent that broke the policy or sought the policy on behalf of the plaintiffs, why did you seek two policies? What did you think an equipment breakdown is? Equipment breakdown coverage is for things that break, a motor that blows apart. It's not an all-risk policy. And in this case, the breakdown definition is simply physical damage. This policy excludes loss caused directly or indirectly by physical damage to covered equipment caused by a windstorm. That's what we have. There's no ambiguity in there. And if you accept the appellant's argument, you'd be rendering part of the wording superfluous, which you of course can't do. You'd be reading indirectly out of the policy and the entire second sentence of the leading clause. Those two sentences have to be read together. They can only occur when there are more than one peril. And in this case, you had – there's no question that wind is a but-for cause. I mean, this building survived countless rainstorms before wind damaged the roof. There's no doubt that wind damaged the roof. There's no doubt that it was the wind that started the whole thing. No one's arguing anything to the contrary. The problem is they're just focused on language. They're saying what you're asking us, in effect, to do is to rewrite the windstorm exclusion to say we will not pay for losses and damages caused directly or indirectly by windstorm. But that's not what it says because of that breakdown language in the middle of the exclusion. Breakdown caused by windstorm. Really, breakdown is physical damage to covered equipment caused by windstorm. It's really the appellant that would seek to put in approximately or directly caused in windstorm exclusion. The lead-in does that. The lead-in applies to all the exclusions. The question is, did the wind cause a breakdown to covered equipment in the first instance? There's only one peril covered. It's a breakdown to covered equipment. So, look, let me give you a different situation. The wind damages some covered equipment on the roof. The wind damages that. And that causes all sorts of other things. The equipment that is damaged has a short circuit and that causes any number of other things thereafter. The exclusion clearly applies because it is indirect damage that results from damage to a breakdown to covered equipment. But that isn't what happened here. I have to go back and start with the insurance clause. The policy only covers loss of damage. You can't read the breakdown definition in isolation from the insurance clause of the It only covers loss or damage by a covered cause of loss. A covered cause of loss is a breakdown to covered equipment. It's a named peril policy. That's the only thing it covers. The lead-in to the exclusion also talks about loss or damage caused directly or indirectly by any of the following. Again, it's the loss or damage for which the insured seeks coverage that those two lead-in causes apply to. And so to take the causation element in the windstorm exclusion and say it has to be direct cause when it's already modified by directly or indirectly. Explain to me why earthquake doesn't have this limitation to break down to cover equipment. But earthquake is indirect or indirect damage. And wind instead is breakdown of which is of covered equipment. It's purely for context, Your Honor. Just sloppiness in writing to write it differently in different ways. No, I don't think it adds anything. If you look at the exact definition of breakdown, all that definition means is physical damage to covered equipment. So if you're substituting- Why didn't you use the same language? You could have, you know? Why didn't you just say, direct or indirect damage caused by wind? As you said, direct or indirect damage caused by earthquakes. It doesn't change the meaning of the policy. If you had direct or indirect in front of caused by windstorm, it would be redundant. Because you've already got that in the lead-in clause that says everything that follows is, remember, it's loss or damage is what's excluded, not the perils. Not the causes. It's loss or damage caused by any of the following. A breakdown caused by windstorm is already modified by directly or indirectly. And if you reach any other interpretation, you're rendering that entire lead-in clause superfluous. It has to have meaning. Windstorm indirectly caused whatever loss it is they're claiming. Reading the policy as a whole, as you must, this loss falls within the exclusion. It's loss or damage that the policy covers. It's loss or damage that the exclusionary paragraph applies to. The sentence in question, if you insert the language that should be inserted in place of any of the following, the sentence says, we will not pay for loss or damage caused directly or indirectly by a sudden and accidental direct physical loss to covered equipment that is caused by windstorm or hail. Right? Right. So we don't have here the covered equipment being damaged directly, the direct physical loss to the covered equipment caused by windstorm or hail. That's what they need to prove covered. If we don't have a breakdown, we don't have a covered loss. You have sudden accidental damage to the equipment. We're talking about the meaning of the exclusion. And the exclusion applies to physical damage caused by windstorm.  And if we don't find an ambiguous policy, because the language of the exclusion mirrors the language of the inclusion and it creates a big confusion, then the New York courts tell us that that's to be interpreted in favor of the insured. I think the policy is abundantly clear. Nobody could pick up this policy with that leading clause and see an exclusion for windstorm and an exclusion for flood and think they have coverage for hurricane. Abundantly clear, but it's managing to confuse these dopes up on the table. And when the policy wants to provide coverage for a breakdown, it sues from an excluded peril. It does so. It does so specifically in three or four different exclusions, corrosion, wear and tear. Because that's typically what causes an equipment breakdown, are those perils. So the coverage would be illusory without it. So looking at it all together, all of the exclusions, the deleting clause modifies all of the exclusions. The intent is clear that any loss caused directly or indirectly or contributed to in any sequence by any of those excluded perils is excluded, except where it specifically says we'll cover an ensuing breakdown. The only way you get an ambiguity is if you use the superseded breakdown definition that had a causation element within it. The applicable definition doesn't have a causation element. It says, in effect, physical damage to covered equipment caused by a windstorm. That's what the policy excludes, whether a windstorm contributes in any sequence. Thank you. Your Honors, I'll be extremely brief to answer Judge Calabresi's question. There's no extrinsic evidence in the summary judgment record. To the best of my recollection, there's no extrinsic evidence of an understanding by the insured that the windstorm exclusion would apply in any way other than the way we've urged it to be interpreted. And there's no evidence of that in the record in any of the deposition testimony in any of the documents. I don't believe there was any negotiation of these terms or interpretation or exchanges of interpretations. Was all of this before the court said what its interpretation was? I'm just trying to see, because of course, if a court right from the beginning says insurance company, you win. Then there would be no reason for them to introduce any kind of evidence. No, the court didn't define the policy or its interpretation of the policy until summary judgment at the close of discovery. And I was going to add, to the best of my knowledge, there was no exchange of any language between the insured and the insurance company as to the meaning of any of the provisions, certainly nothing with respect to this provision. I don't believe there is any extrinsic evidence the court can look to, or that the insurance company will be able to adduce. If it were left that way open on remand, then it would probably be quickly disposed. I suspect that's correct, Your Honor. Thank you very much, unless the court has any other questions. Thank you, Your Honors. Thank you very much for your arguments, well argued. Your Honors.